IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MARK C. JACKSON,

     Plaintiff,

v.                                  CASE NO. 1:12-cv-66-MP-GRJ

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

     This matter is before the Court on Doc. 6, Plaintiff's Motion for Summary and Declaratory Judgment, and Doc. 30, Defendant's Motion for Summary Judgment. Plaintiff has also filed a "Motion to Clarify Payment Under Policy Re: Summary Judgment." (Doc. 10.) For the reasons set out below, the undersigned respectfully recommends that Defendant's Motion for Summary Judgment (Doc. 30) should be **GRANTED**, that Plaintiff's Motion for Summary Judgment (Doc. 6) should be **DENIED**, and that Plaintiff's "Motion to Clarify Payment" should be **DENIED as moot**.

## I. BACKGROUND

     Plaintiff's mother, Diane Larkin, was found dead in her camper on May 21, 2009. Ms. Larkin's body was reclined on a bench near her dining table, and a number of white pills were found underneath her. Prior to her death, Ms. Larkin was treated for mental illness, including schizoaffective disorder, and had been Baker Acted multiple times. The most recent of these incidents occurred on May 1, 2009, when she was Baker Acted due to a possible suicide risk. During her commitment at Shands Vista Hospital,

Ms. Larkin was diagnosed with schizoaffective disorder and was prescribed psychiatric medication. (Doc. 35-2, at 11-12.) Ms. Larkin was released from the hospital on May 17, 2009. (Doc. 32-1, at 31.) The Certificate of Death prepared by the Medical Examiner stated that the cause of Ms. Larkin's death was "undetermined, circumstances natural." (Doc. 6, at 39.) The Certificate of Death also found that Ms. Larkin's schizoaffective disorder was a "significant condition[] contributing to death." *Id.*

Plaintiff was the designated beneficiary of Ms. Larkin's insurance policy with Defendant Hartford Life and Accident Company ("Hartford"). The policy provided benefits in the case of accidental death or dismemberment. Defendant refused to pay benefits under the policy, on the grounds that Ms. Larkin's cause of death was undetermined and accordingly, Plaintiff had failed to demonstrate that Ms. Larkin's death was an "accident" within the meaning of the policy. (Doc. 6, at 24-26.) On February 24, 2012, Plaintiff filed a complaint in the County Court in Alachua County, Florida, seeking a declaratory judgment on the disputed insurance claim. (Doc. 1-1.) Defendant removed the case to federal court on April 2, 2012 based on diversity jurisdiction. (Doc. 1.)

In his Complaint, Plaintiff alleges that his mother "accidentally died of heat exhaustion or heat stroke after being overcome with fumes and heat as a result of the main circuit breaker to her trailer opening while doing her nails." (Doc. 1-1, at 2.) In his motion for summary judgment, Plaintiff asserts that his mother's death was an "accident" because he "did not expect or foresee my Mother dying of dehydration, heat stroke, or heat exhaustion because her closed trailer lost air conditioning at the end of May, when it is hot in Florida, because of a power surge or some other reason for the main circuit

breaker to her trailer popping." (Doc. 6, at 3.)   In support of his motion for summary judgment, Plaintiff has provided a definition of "diabetic ketoacidosis" from the Mayo Clinic website, his correspondence with Hartford and with the Medical Examiner, Dr. William Hamilton, Ms. Larkin's death certificate, and the Medical Examiner's body diagrams. (Doc. 6.)

## II.  RELEVANT POLICY PROVISIONS

The insurance policy states that benefits will be paid if an insured person suffers an "injury" that results in death or dismemberment. (Doc. 22-2, at 13.)  The policy defines "injury" as "bodily injury resulting directly from accident and independently of all other causes which occurs while the Covered Person is covered under the Policy." *Id.* at 12.  The policy goes on to state that "[l]oss resulting from: a) sickness or disease, except a ps-forming infection which occurs through an accidental wound: or b) medical or surgical treatment of a sickness or disease; is not considered as resulting from injury." *Id.*

The insurance policy does *not* define the word "accident," and the Court therefore looks to Florida law for a definition of this term.  Where not defined, "accident" is given its "man-on-the-street" definition.  *Buck v. Gulf Life Ins Co.*, 548 So.2d 715, 718 (Fla. 4th DCA 1989); *Braley v. Am. Home Assurance Co.*, 354 So.2d 904, 905 (Fla. 2d DCA 1978) (noting the dictionary definition of "accident," which was "[a]n event which takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event.").  An accidental death policy will not cover death by natural causes.

## III. STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment

is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). "In determining whether summary judgment is appropriate, [the Court is] required to draw all reasonable inferences in favor of the non-moving party, not all *possible* inferences." Horn v. United Parcel Services, Inc. 433 F. App'x 788, 796 (11th Cir. 2011) (emphasis added). As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

"Florida law places on the insured the burden of proving that a claim against it is covered by the insurance policy." *LaFarge Corp. V. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997) (citations omitted). Here, then, Plaintiff bears the burden of demonstrating that his claim for accidental death benefits is covered by the Hartford policy. The Eleventh Circuit has noted that

[i]t is well settled that "after adequate time for discovery and upon motion,

[summary judgment is appropriate] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, in response to a motion for summary judgment, a nonmoving-plaintiff must present evidence in support of his allegations sufficient to raise a genuine issue of material fact regarding each element of his claim. As established in *Celotex,* it is not necessary for the party moving for summary judgment to introduce any evidence at all in order to prevail on his motion. Rather, in cases in which the nonmoving party will bear the burden of proof at trial, the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him. *Id.* Where the nonmoving party fails to present such evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

*Maxi-Taxi Of Fla., Inc. v. Lee County Port Auth., 3*01 F. App'x 881, 885 (11th Cir.

2008). Where the nonmoving party bears the burden of proof, he must offer

more than a mere "scintilla of evidence" in support of his position. *Anderson v.*

*Liberty Lobby*, 477 U.S. 242, 252 (1986). In the context of these cross-motions

for summary judgment where Plaintiff bears the ultimate burden of proving his

eligibility for benefits under the policy, Defendant will be entitled to summary

judgment if it can demonstrate that Plaintiff has presented insufficient evidence

to prevail on his claim as a matter of law.

## IV. DISCUSSION

Plaintiff's claim to benefits is based entirely on his theory that Ms. Larkin's

death was caused by heat exhaustion and/or heat stroke, and was thus an

"accident" within the meaning of the policy. Defendant does not appear to

dispute the premise that if Ms. Larkin's cause of death was heat stroke, and *only*

heat stroke, that this would qualify as an "accident." Defendant argues, however, that Plaintiff has failed to present admissible evidence in support of the theory that his mother died of heat stroke, and that his claim therefore fails as a matter of law.

The facts surrounding Ms. Larkin's death are as follows. Ms. Larkin lived in a camper trailer, and the living area of the trailer was a "throw-out" section with a black roof. (Doc. 32-1, at 68-69.) Ms. Larkin lived alone in the trailer, but Plaintiff, her son, would occasionally come by to check on her. Plaintiff last saw his mother alive on May 18, 2009, when he saw her through the window of the trailer. *Id.* at 28-29. Because she had asked him to "leave her alone" following her release from Shands Vista Hospital for mental health treatment, he observed her through the window but did not go inside the trailer. Plaintiff stated in his deposition that the air conditioner unit of the trailer was working on that date. *Id.* at 37.

On May 21, 2009, the Bradford County Sheriff's Department responded to a "well-being check" call on Ms. Larkin, and found her deceased in the trailer. (Doc. 32-2, at 21.) Detective Kevin Mueller arrived at the scene and examined the body, and testified that he could not recall if the trailer was unusually hot or cold at the time that he arrived. *Id.* at 36. There was no notation on Detective Mueller's report indicating the temperature inside or outside the trailer. The Sheriff's Department notified a local funeral home to collect Ms. Larkin's body.

Dr. William Hamilton, the Medical Examiner, conducted an autopsy on Ms. Larkin and concluded that her cause of death was "undetermined, circumstances

natural." (Doc. 32-3, at 7-8.) Dr. Hamilton testified in his deposition that he had

no evidence that Ms. Larkin's death was accidental. *Id.* at 51. Dr. Hamilton

noted that Ms. Larkin had several bruises on her back, hip, and buttock, but that

these bruises appeared to have occurred on different occasions, and were not

life-threatening. *Id.* at 27-28. He testified that he concluded that Ms. Larkin's

schizoaffective disorder was a significant condition contributing to her death

because people with such disorders can die suddenly and unexpectedly. *Id.* at

9-10. Dr. Hamilton noted that he could not determine if schizoaffective disorder

was the direct cause of death in this case. *Id.* at 10. He also stated that there

was no evidence of Ms. Larkin's psychiatric medications in her bloodstream. *Id.*

at 45. Dr. Hamilton did find some evidence of ketones in Ms. Larkin's blood, a

condition he described as ketoacidosis. *Id.* at 39. He stated that there were

many possible causes of ketoacidosis, and that he did not believe that the

ketoacidosis in Ms. Larkin's blood was a significant factor in her death. *Id.* at 39-

43. Finally – and most notably – Dr. Hamilton opined that he had "no evidence"

that Ms. Larkin had died of heat stroke. *Id.* at 9.

 In his motion for summary judgment, Plaintiff asserts that his mother died

of heat exhaustion or heatstroke because the air conditioning in her trailer failed,

and the "throw-out" portion of the trailer became extremely hot because of the

black roof. However, Plaintiff has provided no admissible evidence in support of

this theory, and his argument thus rests solely on conjecture.

 Plaintiff first asserts that it was unusually hot during the week that Ms.

Larkin died. He acknowledged during his deposition, however, that his

information regarding the outside temperature on May 19, 20, and 21, 2009, was derived from visiting the Weather Source website. (Doc. 32-1, at 37-39.) This weather data constitutes hearsay, and is inadmissible for the purposes of Plaintiff's summary judgment motion. While Plaintiff asserts that the interior of the "throw-out" portion of the trailer was hotter than the outside temperature, he has provided no evidence at all of what was the temperature inside the trailer. Plaintiff stated in his deposition that his experience in a college thermodynamics course permitted him to calculate the ratio between the external temperature and temperature inside the trailer, but admitted that he had never calculated such a ratio for Ms. Larkin's trailer. *Id.* at 71-73. Plaintiff also admitted that even if he were able to calculate the ratio of internal temperature to external temperatures, that figure would shed no light on what the temperature in Ms. Larkin's trailer would have been if she had been using the air conditioner. *Id.* at 75.

Plaintiff next asserts that the temperature in Ms. Larkin's trailer became excessively high because the main circuit breaker "popped," causing the air conditioner to shut off. Plaintiff stated that when he visited his mother's trailer on May 18, 2009, the air conditioning unit on her roof was working. *Id.* at 45. Plaintiff then stated that when he visited the trailer approximately one week after Ms. Larkin's death, he attempted to run the air conditioner but found that it "worked for a little while and then broke at some point." *Id.* at 75, 76-77. Plaintiff testified that he found that the main circuit breaker had tripped and turned off, leading him to believe that the air conditioner was using excessive electricity and was not working properly at the time of Ms. Larkin's death. *Id.* at 82-84. Again,

Plaintiff's theory of temperature rests on his own conjecture, rather than on admissible evidence. Plaintiff has presented no evidence as to when the circuit breaker tripped, and there is no evidence on this record to indicate that the air conditioner broke or circuit breaker tripped prior to Ms. Larkin's death. While the officer investigating Ms. Larkin's death had no memory of the temperature in the trailer on that day, he made no note of excessive heat in the trailer. (Doc. 32-2, at 36.)

Finally, Plaintiff asserts that the presence of ketones in Ms. Larkin's blood supports the theory that she died of heat stroke. In support of this theory, Plaintiff has provided the Mayo Clinic website's definition of diabetic ketoacidosis. (Doc. 6, at 32.) Plaintiff theorizes that Ms. Larkin's ketoacidosis "could have led to her losing consciousness," and that "underneath that dark roof, which was like an oven," she died of heat stroke. (Doc. 32-1, at 116.) Again, Plaintiff has provided no admissible evidence in support of this theory. The Mayo Clinic website printout constitutes hearsay, and is inadmissible in support of the motion for summary judgment. Even if the printout were admissible, there is no evidence that Ms. Larkin had diabetes, and the definition of diabetic ketoacidosis is therefore irrelevant. Dr. Hamilton, the Medical Examiner, testified that he believed that the level of acetone in Ms. Larkin's blood was insignificant. (Doc. 32-3, at 43.)

In sum, Plaintiff's theory that Ms. Larkin fainted from ketoacidosis and subsequently died of heat stroke is just that—a theory. Because Plainitff bears the ultimate burden of proof in demonstrating entitlement to insurance benefits,

he must present more than a mere "scintilla of evidence" in support of his

position. *Anderson*, 477 U.S. at 252. Plaintiff has failed to meet that burden.

Accordingly, the undersigned recommends that Defendant's motion for summary

judgment should be granted.

## V. RECOMMENDATION

In light of the foregoing it is respectfully **RECOMMENDED** that

Defendant's Motion for Summary Judgment (Doc. 30) should be **GRANTED**, that

Plaintiff's Motion for Summary Judgment (Doc. 6) should be **DENIED**, and that

Plaintiff's "Motion to Clarify Payment" should be **DENIED as moot**.

**IN CHAMBERS** this 12th day of February 2013.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**