**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

MARK C. JACKSON,

      Plaintiff,

v.                                           CASE NO. 1:12-cv-00066-MP-GRJ

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

      Defendant.

_____/

# O R D E R

This matter is before the Court on Doc. 38, the Report and Recommendation of Magistrate Judge, which recommends granting summary judgment in favor of the defendant. The plaintiff filed an objection, Doc. 39, and the Court has made a de novo determination of those portions of the Report and Recommendation to which objection was made. 28 U.S.C. § 636(b)(1)(C). Upon consideration, the Court agrees with the Magistrate Judge that summary judgment in favor of the defendant is appropriate.

## I. BACKGROUND FACTS

This case involves the death of Ms. Larkin, plaintiff's mother, on May 21, 2009, and whether her death should be covered by an accidental death policy issued by the defendant and of which plaintiff is the beneficiary. Ms. Larkin lived alone in a camper trailer that has a "throw-out" section with a black roof. (Doc. 32-1 at 68-69). Plaintiff described the "throw-out" section as a section of the trailer that "comes in" while driving the camper but that can be "thrown out" while being used as a living quarters. *Id.* Plaintiff would occasionally check on his mother and most recently saw his mother alive on May 18, 2009. *Id.* at 28-29. On that date, respecting his

mother's wishes to "leave her alone," plaintiff did not enter the trailer and instead checked on his mother by observing her through the window of the trailer. *Id.* Plaintiff stated in his deposition that he observed that the air conditioner was working at this time. *Id.* at 37

On May 21, 2009, at 9:28 AM, the Bradford County Sheriff's Department received a "well-being check" call on Ms. Larkin. (Doc. 32-2 at 21). The complainant placed the call because the complainant observed that Ms. Larkin's lights were not on and that there was no response at the door. *Id.* at 21, 41. After gaining access to the trailer, the Sheriff's Department found Ms. Larkin deceased. Detective Kevin Mueller examined the body and speculated based on the narrow positioning of the body that Ms. Larkin voluntarily assumed a prone position. *Id.* at 37-38. He also testified that he could not recall whether or not the temperature inside the trailer was unusual. *Id.* at 35-36. Detective Mueller's report did not have a notation regarding the temperature inside or outside the trailer. The Sheriff's Department notified a local funeral home to collect Ms. Larkin's body.

Dr. William Hamilton conducted an autopsy on Ms. Larkin and concluded that she died of undetermined natural causes. (Doc. 32-3 at 7-8). At his deposition, Dr. Hamilton testified that he had no evidence that Ms. Larkin's death was accidental and testified that the bruises on her body appeared to have occurred on different occasions and did not appear to be life threatening. *Id.* at 27-28, 50-51. Dr. Hamilton stated that he had no evidence that Ms. Larkin's death was caused by heat stroke. *Id.* at 9.

Ms. Larkin has a history of being treated for mental illness. She has been Baker Acted multiple times, most recently on May 1, 2009, when she was Baker Acted as a possible suicide risk. She was commited to Shands Vista Hospital and was diagnosed with schizoaffective disorder and prescribed psychiatric medicine. (Doc. 35-2 at 11-12). Though Dr. Hamilton was

unable to determine if Ms. Larkin's schizoaffective disorder was the direct cause of death, he

testified that her schizoaffective disorder was a significant condition contributing to her death

because people with schizoaffective disorder can die suddenly and unexpectedly. *Id.* at 9-10.

He also testified that no trace of Ms. Larkin's psychiatric medication was found in her

bloodstream. *Id.* at 45.

Dr. Hamilton did find evidence of trace amounts of ketones in Ms. Larkin's blood but

stated that he believed the ketoacidosis in Ms. Larkin's blood was not a significant factor in her

death. *Id.* at 39-43, 65. He testified that the trace amount of ketones in Ms. Larkin's body was

not significant enough to result in a loss of consciousness. *Id.* at 65. During cross-examination,

Dr. Hamilton was unable to confirm whether or not the grey-brown sticky fluid in Ms. Larkin's

stomach was coffee. *Id.* at 63.

## II. <u>DISCUSSION</u>

The Policy states that benefits will be paid if an insured person suffers an "injury" that

results in death or dismemberment. (Doc. 22-2 at 13). The Policy defines "injury" as "bodily

injury resulting directly from accident and independently of all other causes which occurs while

the Covered Person is covered under the Policy." *Id.* at 12. "Loss resulting from . . . sickness or

disease . . . is not considered as resulting from injury." Furthermore, because the word

"accident" is not defined in the Policy, it is given its "in-the-street" definition. *See Buck v. Gulf

Life Ins. Co.*, 548 So.2d 715, 718 (Fla. 4th DCA 1989). Therefore, an accidental death policy

will not cover death by natural causes. *See id.* In the instant case, plaintiff alleges that Ms.

Larkin died as the result of an "injury" caused by heat exhaustion or heat stroke. (Doc. 1-1).

Defendant claims there is no evidence that Ms. Larkin died of an "injury" and moved for

summary judgment against the plaintiff. (Doc. 30). Plaintiff also moved for summary judgment,

Doc. 6.

The entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). While making this determination, the Court must consider all of the evidence "in the light most favorable to the non-movant." *Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). However, the Court is required to draw only all "reasonable inferences" in favor of the non-moving party, not all "possible inferences." *See Horn v. United Parcel Services, Inc.*, 433 F.App'x 788, 796 (11th Cir. 2011).

The moving party bears the initial burden of establishing the nonexistence of a "genuine issue" of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). However, "in cases in which the nonmoving party will bear the burden of proof at trial, the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the non-movant to come forward with some evidence or risk having judgment entered against him." *Maxi-Taxi of Fla., Inc. v. Lee County Port Auth.*, 301 F.App'x 881, 885 (11th Cir. 2008). If the nonmoving party fails to present sufficient evidence then there is no genuine issue of material fact, since a failure of proof regarding an essential element renders all other facts immaterial. *See id.* Therefore, plaintiff bears the burden of proving that his claim for accidental death benefits is covered by the Policy because Florida law places on the insured the burden of proving that a claim against the insurer is covered by the insurance policy. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997).

The party that bears the burden of proving a material fact must offer more than a mere "scintilla of evidence" in support of that party's position. *See Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 252 (1986).  The evidence must be sufficient enough so that a jury could

reasonably find for that party.  *See id.*  Thus, unless plaintiff offers more than a mere "scintilla of

evidence" that Ms. Larkin's death was covered by the Policy, defendant is entitled to summary

judgment.

Plaintiff argues that Ms. Larkin's death was caused by heat exhaustion or heat stroke

when her air conditioner failed; and thus, pursuant to the Policy, plaintiff is entitled to benefits

because Ms. Larkin suffered an "injury" that resulted in death.  Defendant does not dispute that

death caused by heat exhaustion or heat stroke is covered by the Policy; however, defendant

argues that plaintiff has failed to present admissible evidence in support of plaintiff's theory and

that plaintiff's theory therefore fails as a matter of law.

In support of his theory, plaintiff claims that Ms. Larkin's main circuit breaker "popped",

causing the air conditioner to shut off.  Plaintiff claims that as a result, the internal temperature

of the trailer became excessively hot.  In support of this claim, plaintiff stated that the air

conditioner was working on May 18, 2009, the last time he visited Ms. Larkin prior to her death.

(Doc. 32-1 at 45).  Plaintiff stated that he visited the trailer one week after Ms. Larkin's death

and discovered that the air conditioner was broken.  *Id.* at 75, 76-77.  During this visit he

observed that the main circuit breaker had tripped and turned off.  As a result of this observation,

plaintiff believes that the air conditioner was not working properly at the time of Ms. Larkin's

death.  *Id.* at 82-84.  Plaintiff offers no admissible evidence to support this theory; he merely

offers his own conjecture.  Furthermore, the officer investigating Ms. Larkin's death has no

memory of unusual temperature within the trailer and made no note in the record regarding

excessive heat in the trailer.  (Doc. 32-2 at 36).  Standing alone, the fact that the neighbor that

placed the "well-being check" call observed that the lights were off on the morning that Ms.

Larkin was found dead is not sufficient to support Plaintiff's theory that the main circuit breaker "popped".

Plaintiff also seeks to admit data from a Weather Source website that states that the week Ms. Larkin died was unusually hot. (Doc. 32-1 at 37-39). This data is inadmissible because it constitutes hearsay. Plaintiff seeks to rely on this data by using the external temperature to calculate the internal temperature of the trailer. *See id.* at 71-73. However, this claim fails because as discussed *supra*, plaintiff has failed to present any evidence that the air conditioner was not working at the time of Ms. Larkin's death. By plaintiff's own admission, calculating the internal temperature based on the external temperature would be impossible if the air conditioner was working. *Id.* at 74-75. Therefore, any use of the external temperature to calculate the internal temperature would be nothing more than unverifiable conjecture.

Additionally, plaintiff claims that the presence of ketones in Ms. Larkin's blood supports the theory that she died of heat stroke. Plaintiff's theory is that Ms. Larkin's ketoacidosis caused her to lose consciousness and die of heat stroke inside her trailer. *Id.* at 116. In support of this theory, plaintiff provided the definition of ketoacidosis from the Mayo Clinic website. (Doc. 6 at 32). Again, this information constitutes inadmissible hearsay and plaintiff has provided no other evidence to support this theory. Even assuming the evidence was admissible, the definition of diabetic ketoacidosis is irrelevant because there is no evidence that Ms. Larkin was a diabetic. Furthermore, Dr. Hamilton testified that the level of acetone in Ms. Larkin's blood was insignificant and would not have caused a loss of consciousness. (Doc. 32-3 at 43, 65). Dr. Hamilton's testimony is also supported by Detective Mueller's testimony. Based on the position

of Ms. Larkin's body, Detective Mueller believed that Ms. Larkin voluntarily assumed a prone position and did not fall as a result of losing consciousness. (Doc. 32-2 at 37-38).

Lastly, the Court will consider two facts presented by plaintiff that were not discussed in the Report and Recommendation. First, that the coffee in Ms. Larkin's stomach suggests that she died of heat exhaustion or heat stroke. There is no admissible evidence regarding the presence or absence of coffee in Ms. Larkin's stomach. The autopsy did not confirm whether or not the grey-brown sticky fluid in Ms. Larkin's stomach was coffee. (Doc. 32-3 at 63). Even assuming that the fluid was coffee, the Court does not agree that this fact supports plaintiff's theory. The Court finds it unlikely that Ms. Larkin would choose to drink hot coffee if, as the plaintiff contends, the conditions inside the trailer were sweltering. Second, the plaintiff claims that the image depicting Ms. Larkin attempting to remove her shirt supports his theory that she died of heat stroke or heat exhaustion. Though this may have some probative value, based on all the other evidence the Court cannot assume that this is any indication of the internal temperature of the camper. There are any number of reasons why Ms. Larkin may have assumed this position. This fact alone is not enough for a reasonable jury to find for the plaintiff.

In conclusion, plaintiff has failed to present more than a mere "scintilla of evidence" to support his theory that Ms. Larkin died of heat exhaustion or heat stroke as a result of excessive heat within her trailer. Plaintiff has failed to present any substantive evidence regarding the internal temperature of the trailer and has failed to rebut the Medical Examiner's testimony regarding the cause of death. No jury could reasonably find for the plaintiff based on the

evidence plaintiff offers to support his theory.  Therefore, plaintiff has failed to carry his burden of proof.

Accordingly, upon due consideration, it is

**ORDERED AND ADJUDGED:**

1. The Report and Recommendation is adopted and incorporated herein.
2. Defendant's Motion for Summary Judgment (Doc. 30) is hereby GRANTED.
3. Plaintiff's Motion for Summary Judgment (Doc. 6) is hereby DENIED.
4. Plaintiff's "Motion to Clarify Payment" (Doc. 10) is hereby DENIED as moot.

**DONE AND ORDERED** this _27th_ day of March, 2013

*s/Maurice M. Paul*

Maurice M. Paul, Senior District Judge